IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY, *et al.*, | ) | CASE NO. 1:14 CV 2542 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| PRO-MARK CONTRACTING, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | |

This matter is before the Court as a collective action with three opt-in plaintiffs. Plaintiffs, James Terry, Vincent Sanchez, and Janese Brodkowski[1] allege that the Defendants failed to pay them overtime as required under 29 U.S.C. 207(a)(1) and Ohio Revised Code § 4111.01, the Federal and Ohio wage/hour laws. They have also brought claims for breach of contract, alleging a failure to pay prevailing wages, and under O.R.C. § 4113.05, Ohio's Prompt Pay Act. Defendants have filed a motion for summary judgment on all claims. (ECF # 69). For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED in part

---

[1] Ms. Brodkowski's name is spelled differently in several different places in the record. (Brockowski, Brokowski, Brodkowski, Brodokowski). The Court will use the "Brodkowski" spelling as this is how it is spelled on her Consent Form to join the litigation.

and DENIED in part.

## **Facts**[2]

Defendant Pro-Mark Contracting, LLC ("Pro-Mark") is engaged in the business of providing line painting and striping services throughout Ohio and in certain other states. The Plaintiffs all worked for Pro-Mark as general laborers performing the line painting and striping services. Mr. Sanchez's declaration in opposition to Defendants' Motion for Summary Judgment states that he worked for Pro-Mark from 2008 through 2012. (ECF #95-1). Mr. Terry claims to have worked from November of 2013 through September of 2014. (ECF #95-4). Ms. Brodkowski did not submit a declaration in support of the Opposition to Defendants' first motion for summary judgment, but did testify during her deposition that she worked for Pro-Mark from approximately February 2012 to November of 2012. (ECF #94-2, Brodkowski Depo. pp. 7, 11).

Plaintiffs, Mr. Terry and Mr. Sanchez have submitted declarations indicating they worked on road construction and improvement projects on public roadways in Ohio while they were employed by Pro-Mark. Mr. Sanchez further claims that he preformed work for Pro-Mark on public roadways in West Virginia. (ECF #93-2, Sanchez Depo. pp. 38-39) Ms. Brodkowski testified that she worked on parking lots originally, and later did work on "more of the big stuff." (ECF #94-2, Brodkowski Depo. p. 13). She later testified that she did some "roadway" work. (ECF #94-2, Brodkowski Depo. p. 18). There is no other evidence before the Court describing

---

[2] Except as otherwise cited, the factual summary is based on the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

what type of work Ms. Brodkowski performed or where such work was performed.

Each Plaintiff alleges that they regularly worked in excess of forty hours a week and were not paid time and half for their overtime hours as required by state and federal law. Mr. Sanchez also appears to allege in his declaration that he was not paid, even straight time, for all of the hours he worked. (ECF # 36-1). Defendants admit that they failed to pay Mr. Terry $650.00 in overtime pay that he was owed.

In support of Defendants' Motion for Summary Judgment, Ryan Kinley, President of Pro-Mark, submitted an affidavit stating that Pro-Mark made less than $500,000.00 in gross income in 2012 and 2013. (ECF #69-1). He admits to making over $500,000.00 of gross income in 2014. (ECF # 69-1). There appears to be no dispute that, in its business, Pro-Mark uses equipment and supplies that have been involved in interstate commerce.

**Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the

> adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing

law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Analysis

I. Counts One and Two: Non-Payment of Overtime

Plaintiffs allege that, they were not compensated for hours in excess of forty (40) per week in violation of federal and Ohio state law. Under section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and O.R.C. §4111.03(A) an employer is required to pay employees time and a half for all hours worked in excess of forty (40) per week.

A. Applicability

1. FLSA

The overtime pay provisions of the Fair Labor Standards Act, 29 U.S.C. §207(a)(1), apply to employers whose employee is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engage in commerce or in the production of goods for commerce." Under these provisions, any such employee is entitled to compensation at a rate of

-6-

not less than one and one-half times the regular rate at which he or she is employed for any hours worked in a week in excess of forty hours. 29 U.S.C. §207(a)(1). There is no allegation in this case the employees at issue were engaged in the production of goods for commerce, but each Plaintiff alleges that they were both "engaged in commerce" and "employed in an enterprise engaged in commerce." These allegations will be addressed in reverse order below.

### a. Enterprise Engaged in Commerce

Pursuant to 29 U.S.C. § 203(r)(1) and (s)(1)(A)(i), (ii), an "enterprise engaged in commerce" means an entity or entities performing related activities for a common business purpose, including those activities performed for the enterprise by independent contractors, that "has employees engaged in commerce... or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "whose annual gross volume of sales made or business done is not less than $500,000.00 (exclusive of excise taxes at the retail level...)."

Plaintiffs have provided some evidence that Pro-Mark's employees handled, sold, or otherwise worked on goods or materials that had been moved in or produced for commerce by any person, during the times at issue in this litigation. This evidence is sufficient to overcome Defendant's motion for summary judgment on this specific element required to establish FLSA liability. The second element, relating to the annual gross volume of sales, however, proves a more difficult hurdle. Defendants admit that Pro-Mark exceeded $500,000.00 annual gross income. (ECF #69-1). Though gross income and gross sales or revenue are technically different terms, gross sales would theoretically always have to be higher than gross income as it includes

all revenue brought in without consideration of costs put out.[3] Thus, this admission equates to admission that Pro-Mark made more than the required threshold for enterprise applicability under the FLSA in 2014, and this element is therefore, established for the year 2014.

Defendants, however, provided absolutely no evidence to demonstrate that Pro-Mark met this threshold for liability under 29 U.S.C. § 207(A) in the years 2012 and 2013. In fact, they never once mention this monetary threshold in their briefing of this issue. Defendant, as the movant, bears the burden of demonstrating that there is no genuine issue of material fact on this element, and they have failed to do so. Therefore, the issue of whether Pro-Mark can be liable for overtime wages as an "enterprise engaged in commerce" for the years 2012 and 2013, remains in question.

### b. Employees Engaged in Commerce

In order to be protected by the overtime provisions of the FLSA as an "employee engaged in commerce," Plaintiffs would have to show that they, individually, were "engaged " in "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof. Plaintiffs have submitted sufficient information upon which a jury could find that they, at some points during their employment, may have engaged in commerce. This precludes the Court from finding in favor of Defendants on this issue at this stage of the litigation. Therefore, the overall question of whether FLSA overtime provisions apply in this case remains a question of fact for trial.

---

[3] The converse, however, does not necessarily hold true. As stated above, Mr. Kinley's affidavit technically attests that Pro-Mark made less than $500,000.00 in gross income in 2012 and 2013. It does not necessarily follow that the company did not bring in less than $500,000.00 in annual gross sales for that year.

2. O.R.C. §4111.03

The overtime provisions of Ohio Revised Code § 4111.03 have no commerce limitations. Those provisions apply to any employer whose annual gross volume of sales made for business done is more than one hundred fifty thousand dollars, exclusive of excise taxes at the retail level. O.R.C. § 4111.03(D)(2). Neither side has provided any evidence as to whether Pro-Mark had an annual gross volume of sales made for business done of more than one hundred fifty thousand dollars during the years at issue, except that Pro-Mark had admitted to having more than that amount during the year 2014.[4] For purposes of this motion, therefore, the Court must assume that the threshold was met and that the overtime provisions of O.R.C. § 4111.03 apply to all three Plaintiffs.

B. Statutes of Limitation

An action for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") must be commenced within two years after the cause of action accrued, or shall be forever barred. There is an exception when the cause of action arises from a willful violation, however, in which case the limitations period is extended to three years. 29 U.S.C. § 255(a); *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008). Under Ohio's overtime pay statute, O.R.C. 4111.01, the statute of limitations is two years, with no exception for willful violations. O.R.C. 2305.11(A); *see also, State ex rel. Gingrich v. Fairfield City Schools*, 18 Ohio St. 3d 244, 480 N.E.2d 485 (1985).

---

[4] Defendants have provided Mr. Kinley's uncontested statement attesting that Pro-Mark did not meet the $500,000.00 annual gross volume of sales required for FLSA enterprise status in the years 2012 and 2013. The Court, however, has not been given any information regarding whether the state threshold of $150,000.00 in annual gross sales was reached for those years.

Under 29 U.S.C. § 256, in collective action for a violation of the FLSA, each Plaintiff's cause of action is deemed to have commenced on the date his or her written consent to become a party plaintiff is filed in the court in which the action was commenced.  The written consent requirement and commencement trigger applies not only to opt in Plaintiffs, but to named Plaintiffs, as well.  29 U.S.C. § 256(a).  In this case, although both Mr. Terry and Mr. Sanchez were named Plaintiffs in the Second Amended Complaint, neither filed a consent to become a party plaintiff until September 4, 2015.  Because the case was filed as a collective action, the statute of limitations continued to run against their claims until that date.  Ms. Brodkowski's consent was filed on July 7, 2015.

Mr. Terry worked for Pro-Mark beginning in November of 2013.  Therefore, his overtime claims are all timely under both the federal and state statutes.  Both Mr. Sanchez and Ms. Brodkowski stopped working for Pro-Mark at the end of 2012.  Their state claims and any non-willful violations of the FLSA are, therefore, time barred.  Mr. Sanchez may only pursue his claim for an alleged willful failure to pay overtime for work which would have had a regular pay date on or after September 4, 2012.  *See, e.g., Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008).   Ms. Brodkowski may pursue only her claims for an alleged willful failure to pay overtime for work which would have had a regular pay date on or after July 7, 2012.

II.  Count Three: Breach of Contract

Plaintiff's Count Three alleges a breach of contract under Ohio law, based on Defendant's alleged failure to pay the Plaintiffs in accordance with State and Federal

requirements "including the payment at the prevailing wage rate when required." Defendants seek dismissal of this Count on the grounds that it is merely an attempt to enforce prevailing wage statutes without abiding by the administrative requirements set forth in those statutes.(ECF #26 at ¶ 53). There is no allegation of a written contract, and there is no allegation that Defendants promised to pay Plaintiffs prevailing wage, either in general or for any specific job. Further, Plaintiffs' only response to Defendants' motion for summary judgment on this issue, is to argue that some of the jobs Plaintiffs worked on were prevailing wage jobs.

It is clear from the Complaint, and the briefing on summary judgment, that the breach of contract claim is aimed solely at recovering wages that allegedly should have been paid to the Plaintiffs under state and federal prevailing wage laws. However, the prevailing wage laws require an employee who believes he or she is entitled to prevailing wage compensation to follow certain administrative procedures that were not followed by the Plaintiffs in this case. The administrative requirements cannot be avoided by avoiding the statutory claims and merely inserting a vague claim for breach of contract based on an inference that any employment relationship incorporates a defacto contractual agreement that wage and employment laws will be followed. *Johnson v. Prospect Waterproofing Co.*, 813 F.Supp.2d 4 (D.D.C. 2011). For this reason, Plaintiffs' breach of contract claim must be dismissed for failure to state a claim.

Further, even if the Court were to consider this claim as one made pursuant to the proper statutes, there is no dispute that the Plaintiffs have not followed any of the required administrative procedures under federal or state prevailing wage law. "The Secretary of Labor ("Secretary") "has promulgated extensive regulations regarding the Davis-Bacon Act and its enforcement." *United States ex rel. Bradbury v. TLT Constr. Corp*., 138 F. Supp. 2d 237, 240

(D.R.I. 2001), citing 29 C.F.R. §§ 1, 3, 5-7.  The Act provides that "[i]f the accrued payments withheld under the terms of the contract are insufficient to reimburse" the laborers and mechanics for the wages owed, those "laborers and mechanics have the same right to bring a civil action and intervene against the contractor and the contractor's sureties as is conferred by law on persons furnishing labor or materials," 40 U.S.C. § 3144(a)(2).  However, this remedy is available "only after there has been an administrative determination that some money is owed and that insufficient funds have been withheld to compensate the affected laborer." *Bradbury*, 138 F. Supp. 2d at 241.  No such determination has been requested or made in this case.

In order to recover for any prevailing wage violations under Ohio law, Plaintiffs would have had to file a written complaint with the director of commerce for investigation and a determination as whether any violation occurred.  O.R.C. § 4115.10, 4115.13, 4115.16.  Only following a director's finding of no violation or no willful violation may a petitioner appeal to a court of common pleas.  O.R.C. § 4115.16.  It is undisputed that Plaintiffs did not file any such complaint or otherwise attempt to the address the alleged prevailing wage violation in accordance with the administrative requirements set forth under state or federal law.  Because Plaintiffs did not exhaust their administrative remedies, under the prevailing wage laws, they cannot recover for any alleged damages under these statutes or any other common law cause of action seeking the same relief.  Therefore, summary judgment is granted for the Defendants on the Plaintiffs claims for breach of contract.

III. Count Four: Prompt Pay Act

The Prompt Pay Act, O.R.C. § 4113.15, does not apply to disputed wages.  Liquidated

damages for failure to timely pay wages is available only when there is a failure to pay wages "and no contest court order of dispute of any wage claim. . . exists accounting for the nonpayment."  Therefore, because Defendants disputes the Plaintiffs' wage claims, the Prompt Pay Act does not create a claim for liquidated damages in this case, and summary judgment on this claim is warranted.  There is one exception, however, as during the course of the litigation Defendants admitted that they failed to pay Mr. Terry $650.00 in overtime wages.  Therefore, Defendants could be liable to Mr. Terry for liquidated damages "in an amount equal to six percent of [this amount] . . . or two hundred dollars, whichever is greater.  O.R.C. § 4113.15(B).  Under certain circumstances these damages could be separately assessed for each thirty day period in which the uncontested amount was not paid in full.  O.R.C. § 4113.15(C).  Defendants argue that they should not be liable for late payment even for this amount because their "offer" of payment of this amount to Mr. Terry was refused.  This implies that they attempted to use this amount as a settlement offer, which does not relieve them of their duty to pay the uncontested amount.  If they had simply issued a check to Mr. Terry for the uncontested amount, without restrictions or conditions relating to the remaining claims in the lawsuit, they may have saved themselves any liability under this provision, but based on the information before the Court, it appears that no payment was given, thus, the liquidated damages claim under the Prompt Pay Act remains as to Mr. Terry only, and in connection with the admitted $650.00 payment deficiency.

### **Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment (ECF #69)  is

GRANTED in part and DENIED in part.  The state law claims for overtime compensation by Mr. Sanchez and Ms. Brodkowski are dismissed, as are any claims they may have for a non-willful violation of the FLSA.  They may pursue their claims for willful violations of the FLSA at trial.  Mr. Terry's overtime claims remain under both state and federal law subject to any time restraints set forth above.  The breach of contract claim set forth in Count Three is dismissed as to all Plaintiffs.  Further, the Prompt Pay Act claim in Count Four is dismissed as to Mr. Sanchez and Ms. Brodkowski, and, with regard to Mr. Terry,  is limited to the $650.00 in unpaid overtime amount that is uncontested by the Defendants.  The trial originally scheduled for July 6, 2016 is re-scheduled for Tuesday, August 16, 2016.    IT IS SO ORDERED.

/s/  Donald  C.  Nugent
DONALD C. NUGENT
United States District Judge

DATED:   June 21, 2016